UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWARMA STACKZ LLC,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>JAY JWAD, *et al.*,<br><br>　　　　　　　　Defendants. | Case No. 21-cv-01263-BAS-BGS<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL (ECF No. 5)** |

**I.　BACKGROUND**

　　Plaintiff Shawarma Stackz LLC ("SSL") filed the instant action on July 14, 2021. (Compl., ECF No. 1.) On July 26, 2021, counsel for Defendants, Jesse Gessin, emailed Plaintiff's counsel, Jake Freed, requesting an extension of time to respond to the Complaint. (ECF No. 5-3.) On July 27, 2021, Freed replied, stating in relevant part:

> Maybe we should find time to talk about potential paths to resolution here? A court is going to shut [Defendants] down at some point, and it's going to be a question of how much they owe in damages when that happens. The attorney fees and delay are mounting, and we're just getting more dug in on our side as a result. We also believe they defrauded the United States in connection with [the Paycheck Protection Program (PPP)] and [Restaurant Revitalization Fund (RRF)]—we know they got roughly $1 million for a restaurant that opened during the pandemic, and under the rules for those programs they could not have conceivably qualified for the amount they got without perjuring themselves. We're strongly considering qui tam litigation against

> them, so that DOJ has the opportunity to get involved and take a hard look at this, including the likely criminal aspects of their conduct. The U.S. Trustee's Office just sued Mr. Jwad's brother for bankruptcy fraud in connection with this restaurant; the facts are bad enough here that the government has already shown a willingness to get involved. These guys have a lot of potential jeopardy and their legal problems aren't going away until they stop abusing our brand and give us some compensation.

(ECF No. 5-4.)

Gessin proposed to settle the case with a cash payment of $30,000, which Freed denied. (ECF Nos. 5-5, 5-6.) In an email dated August 6, 2021, Freed declined the settlement offer and wrote:

> Jay may "see things differently," but Jay also does not appear to be a stable person. He brags about likely federal crimes, his automatic weapons, and shooting people on social media. He's going to need to do much better than $30k if he wants this to go away, particularly if he wants to keep the restaurant. If he doesn't want to have a serious negotiation, we move to shut down the restaurant ASAP, pull the trigger on a qui tam complaint, and do our best to get DOJ to start looking into every aspect of his life. As I mentioned, DOJ has already sued Sam Jawad for fraud in connection with this restaurant. These guys are so publicly and transparently crooked, it's not hard to imagine a prosecutor taking a serious look at this, and the qui tam will create that opportunity. Jay should want to get us out of his life, and under a gag agreement at the earliest possibility. The clock is ticking on the qui tam, and once that's filed DOJ is necessarily involved. You might think it's unlikely that DOJ takes an interest, but does Jay really want to run that risk?
>
> If you think further negotiations are possible, let me know. If not, we'll keep working down our list and we'll shut these guys down eventually.

(ECF No. 5-6.)

Gessin wrote back, stating that Freed's email violated California Rule of Professional Conduct 3.10. (ECF No. 5-7.) Gessin asked Freed to withdraw from the case or give Gessin contact information of a partner of the firm to speak about the breach. (*Id.*) Freed replied and wrote that his August 6 email did not constitute an ethical violation. (ECF No. 5-8.) Freed's email stated that Comment 2 to California Rule of Professional

conduct 3.10 makes the rule inapplicable "to a threat to bring a civil action," and Freed's threat to bring a civil *qui tam* action does not violate the rule. (ECF No. 5-8.) Freed opined that a litigation of this issue in federal court would be frivolous. (*Id.*)

Defendants move to disqualify Freed as SSL's counsel. (ECF No. 5.) Freed and his law firm, Davis Wright Tremaine LLP ("DWT"), oppose the motion. (ECF No. 12.) Defendants filed a reply. (ECF No. 17.) The Court held an oral argument on the motion on November 22, 2021. (ECF No. 20.)

## II.   LEGAL STANDARD

### A.   Motion to Disqualify Counsel

Federal law governs the ethical standards of attorney conduct in federal court. *Quatama Park Townhomes Owners Ass'n v. RBC Real Est. Fin., Inc.*, 365 F. Supp. 3d 1129, 1136 (D. Or. 2019) (citing *In re Snyder*, 472 U.S. 634, 645 n.6 (1985)). "The right to disqualify counsel is a discretionary exercise of the trial court's inherent powers." *Id.* (quoting *Certain Underwriters at Lloyd's, London v. Argonaut Ins. Co.*, 264 F. Supp. 2d 914, 918 (N.D. Cal. 2003)).

Federal courts have the authority to "prescribe rules for the conduct of their business." 28 U.S.C. § 2071(a). "Many district courts have adopted the standards and rules governing the professional conduct of lawyers that apply in the jurisdiction in which the court sits." *Quatama Park Townhomes Owners Ass'n*, 365 F. Supp. 3d at 1136 (citing Restatement (Third) of The Law Governing Lawyers § 1 cmt. b (2000)). In this circuit, district courts that have adopted by local rule the state's ethical code governing lawyers "must follow the reasoned view of the state supreme court when it has spoken on the issue." *See Radcliffe v. Hernandez*, 818 F.3d 537, 543 (9th Cir. 2016) (quoting *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000)). "If the state supreme court has not spoken on the issue, [federal courts] look to intermediate [state] appellate courts for guidance, although [the courts] are not bound by them if [the courts] believe that the state supreme court would decide otherwise." *Id.* "If, however, a district court has not adopted its forum

state's code of professional conduct, the question of choice of law is less clear, at least in the Ninth Circuit." *Quatama Park Townhomes Owners Ass'n*, 365 F. Supp. 3d at 1137 (citing *Unified Sewerage Agency of Wash. Cnty. v. Jelco, Inc.*, 646 F.2d 1339, 1342 n.1 (9th Cir. 1981)).

This district's local rules require that attorneys adhere to this district's own Code of Conduct that "establishes the principles of civility and professionalism that will govern the conduct of all participants in cases and proceedings pending in this Court." Civ. L.R. 2.1.a, 83.3.c(1)(c). Because this district's local rules do not formally adopt the California Rules of Professional Conduct ("CRPC"), the Court considers the California rules as guideposts only. *See Quatama Park Townhomes Owners Ass'n*, 365 F. Supp. 3d at 1137.

### B.  Heightened Judicial Scrutiny

"Because a motion to disqualify is often tactically motivated and can be disruptive to the litigation process, disqualification is considered to be a drastic measure that is generally disfavored and imposed only when absolutely necessary." *Brighton Collectibles, Inc. v. Coldwater Creek Inc.*, No. 08-CV-2307-H (WVG), 2009 WL 10671353, at *2 (S.D. Cal. Dec. 8, 2009); *accord Certain Underwriters at Lloyd's London*, 264 F. Supp. 2d at 918. "The party seeking disqualification bears a 'heavy burden.'" *Dimenco v. Serv. Emps. Int'l Union*, No. C 10-03112 SBA, 2011 WL 89999, at *3 (N.D. Cal. Jan. 10, 2011) (quoting *City and Cnty. of San Francisco v. Cobra Sols., Inc.*, 38 Cal. 4th 839, 851 (2006)).

In determining whether to disqualify counsel, courts consider:

> the combined effect of a party's right to counsel of choice, an attorney's interest in representing a client, the financial burden on a client of replacing disqualified counsel[,] and any tactical abuse underlying a disqualification proceeding against the fundamental principle that the fair resolution of disputes within our adversary system requires vigorous representation of parties by independent counsel unencumbered by conflicts of interest.

*Certain Underwriters at Lloyd's London*, 264 F. Supp. 2d at 918 (quoting *Allen v. Acad. Games Leagues of Am.*, 831 F. Supp. 785, 789 (C.D. Cal. 1993)). "Because punishment

for violations of the rules of professional conduct is the purview of the state bar, the court's goal is not to impose a penalty against an attorney, rather the goal is to fashion a remedy for whatever improper effect the attorney's misconduct has had in the case." *Lopez v. Banuelos*, No. 1:11-CV-466 AWI JLT, 2013 WL 4815699, at *4 (E.D. Cal. Sept. 6, 2013).

## III. ANALYSIS

### A. Defendants' Motion to Disqualify Counsel

Defendants move to disqualify Freed and DWT as SSL's counsel, citing violations of this district's local rules, Rule 3.10 of the CRPC, and criminal extortion.

The Court finds that Freed's July 27, 2021 and August 6, 2021 emails explicitly and implicitly communicated to defense counsel that unless Defendants pay a satisfactory settlement amount, he would expose Defendant Jay Jwad to criminal investigation. In connection with the settlement negotiations, Freed brought up his belief that Jay "defrauded the United States" in connection with PPP and RRF programs by obtaining $1 million in loans that the restaurant could not qualify for without committing perjury. (*Id.*) Freed wrote that he was "strongly considering qui tam litigation against [Jay], so that DOJ has the opportunity to get involved and take a hard look . . . , including the likely criminal aspects of [Jay's] conduct." (*Id.*) Freed concluded the July 27 email by stating that Jay had "a lot of potential jeopardy and [his] legal problems are[] [not] going away until [he] stop[s] abusing [the SSL] brand and give[s] [SSL] some compensation." (*Id.*) When Defendants proposed a settlement for $30,000, Freed wrote back that Jay "brags about likely federal crimes, his automatic weapons, and shooting people on social media" and that Jay had to "do much better than $30k." (ECF No. 5-6.) Freed stated that absent a better settlement proposal, he will, among other items, "pull the trigger on a qui tam complaint, and do [his] best to get DOJ to start looking into every aspect of [Jay's] life." (*Id.*)

Freed and his law firm, DWT, argue that Freed's threat was limited to filing a civil complaint or, to the extent the threat to bring a qui tam action implicated threat of criminal

investigation, that the threat was limited to events related to the present litigation. Freed and DWT further argue that defense counsel's present motion constitutes "tactical abuse." The Court disagrees with both arguments. Freed's emails communicated to Defendants that their options were to settle the action or else face a criminal investigation by the DOJ. Freed's conduct implicates serious ethical questions, including whether Freed violated CRPC and/or engaged in criminal extortion, and Defendants' motion cannot be brushed aside as tactical abuse.

That said, applying the heightened judicial scrutiny to Defendants' motion for disqualification of counsel, *Certain Underwriters at Lloyd's London*, 264 F. Supp. 2d at 918, the Court finds that a lesser remedy can address the harm alleged by Defendants. The harm at issue is Jay's fear and anxiety of defending his action at the risk of exposing himself to criminal investigation by the DOJ. That harm can be mitigated by this Court's express order prohibiting Freed and DWT from engaging in any further threats to expose Defendants to criminal investigation to obtain an advantage in this litigation.

This approach was taken by another district court in this circuit. In *Lopez*, a plaintiff filed a federal civil rights law suit against California Highway Patrol officers. *Lopez*, 2013 WL 4815699. At issue was whether the defense counsel for the state should be disqualified for threatening the plaintiff with arrest. The defense counsel had written an email to the plaintiff's counsel, stating that "there [was] a very real chance" that the plaintiff will be arrested if he were to go to trial and that "both federal and state law enforcement [would be] present during the trial." *Id.* at *7. Because these lines "immediately follow[ed] a requested dismissal [of the plaintiff's action] and the payment of $10,000," the *Lopez* court found that defense counsel's e-mail constituted a threat for the plaintiff to drop the civil rights action or else face detention in California. *Id.* The *Lopez* court found it unnecessary to determine whether defense counsel violated CRPC, concluding that the court could alleviate any harm to the plaintiff from defense counsel's threat by issuing a prohibitive order. *Id.* at *4, 8 ("[T]he court's goal is not to impose a penalty against an attorney, rather the goal is to fashion a remedy for whatever improper effect the attorney's misconduct has

had in the case."). Namely, the *Lopez* court found that the harm caused by the threat included the plaintiff's anxiety about attending trial at the risk of facing arrest, which can be alleviated by an order prohibiting the defense counsel from causing criminal proceedings to be brought against the plaintiff in connection with the plaintiff's civil rights action. *Id.*

The Court finds that the approach taken in *Lopez* is applicable to this case. Accordingly, the Court **ORDERS** Freed not to engage in any further threats to expose Defendants to criminal investigation to obtain an advantage in this litigation. Because this Court-ordered remedy can remedy the asserted harm, the Court finds it unnecessary to determine whether Freed's conduct violated this district's local rules or CRPC, or whether Freed engaged in criminal extortion. *See Lopez*, 2013 WL 4815699, at *4 ("[P]unishment for violations of the rules of professional conduct is the purview of the state bar[.]"). Defendants are free to seek additional remedy from the state bar, which is far better equipped to make ethical rulings on attorney conduct.

Therefore, the Court **DENIES** Defendants' motion to disqualify Freed and DWT as SSL's counsel.

### B.   Freed and DWT's Request for Attorney's Fees

Freed and DWT request that the Court award them costs and fees under 28 U.S.C. § 1927, arguing that Defendants moved to disqualify Freed as Plaintiff's counsel as a mere "tactical maneuver." (Opp'n at 24, ECF No. 12.) While the Court denies Defendants' motion to disqualify counsel, the Court does not find that Defendants' motion was merely a "tactical maneuver" or made in bad faith. *Cf. Optyl Eyewear Fashion Int'l Corp. v. Style Cos.*, 760 F.2d 1045, 1048 (9th Cir. 1985) (affirming an award of attorney's fees and costs against a party who brought a "disqualification motion [that] was meritless, . . . brought solely for tactical reasons, and . . . in bad faith"). Accordingly, the Court **DENIES** Freed and DWT's request for attorney's fees.

//

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to disqualify counsel. (ECF No. 5.)  It is further **ORDERED** that Freed and DWT shall not engage in any further threats to expose Defendants to criminal investigation to gain an advantage in this litigation.  The Court **DENIES** Freed and DWT's request for attorney's fees. (ECF No. 12.)

**IT IS SO ORDERED.**

DATED: December 8, 2021

Hon. Cynthia Bashant
United States District Judge